WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Morgan,<br><br>    Plaintiff,<br><br>v.<br><br>Elaine Chao, Secretary, U.S. Department of Transportation,<br><br>    Defendant. | No. CV-16-04036-PHX-DLR<br><br>**ORDER** |

Plaintiff Gerald Morgan alleges that his employer, the Federal Aviation Administration (FAA), violated Title VII of the Civil Rights Act of 1964 by discriminating against him on account of race and retaliating against him for engaging in protected activity. Defendant United States Department of Transportation Secretary Elaine Chao moves for summary judgment on all claims. (Doc. 62.) The motion is fully briefed and neither party requested oral argument. For the following reasons, Defendant's motion is granted.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the non-movant's opposition fails to cite specifically to evidentiary materials, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

In addition to these general principles, this District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered

> paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The court may deem a movant's separate statement of facts to be true if the non-movant does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x 734, 735 (9th Cir. 2010).

## **BACKGROUND**[1]

Plaintiff is an Electronics Technician tasked with installing, certifying, and maintaining the FAA's communications and navigational equipment. (Doc. 63 ¶¶ 1, 3.) During the relevant time period, Plaintiff was assigned to the Central Arizona System Support Center (SSC), and his primary work site was the Scottsdale Tower. (¶ 1.) The Central Arizona SSC includes hundreds of facilities located across central Arizona, which Plaintiff regularly visited to perform facility reviews and building maintenance. (¶¶ 2, 73.)

On July 26, 2012, Will Younger, an Environmental Technician at the Central Arizona SSC, confronted Plaintiff at the FAA's Tempe office by asking why he was not at his primary work site and whether he was afraid of the manager there. (¶¶ 5, 16-18.) Plaintiff told Younger to mind his own business and later reported the interaction to Mary Hart, Plaintiff's and Younger's direct supervisor. (¶¶ 9-10, 17-19.) After being informed of the dispute, Steven Sherwood, Younger's and Plaintiff's second-line supervisor,

---

[1] Defendant submitted a separate statement of facts setting forth each material fact upon which she relies. (Doc. 63.) Each paragraph cites to specific evidence in the record against which no admissibility objections have been raised. In response, Plaintiff submitted a separate statement of correspondingly numbered paragraphs indicating whether he disputes or admits the facts asserted by Defendant. (Doc. 67.) In violation of LRCiv 56.1(b)(1), however, Plaintiff fails to support many of these purported disputes with citations to specific, admissible portions of the record. (*See, e.g.*, ¶¶ 6, 21, 23-26, 30-34, 37, 54.) For purposes of this order, the Court deems admitted any facts not properly disputed. The Court also will not consider any portion of a party's separate statement of facts that impermissibly contains legal argument, conclusory statements, or disputes over matters immaterial to the motion. *See Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182552 (D. Ariz. Mar. 7, 2018).

consulted with Mal Coghlan, the Executive Technical Representative responsible for employee relations issues, about bringing mediators and a conflict resolution trainer to the region. (¶ 88.)

Over the next several months, Plaintiff's supervisors took steps to resolve the conflict between Plaintiff and Younger. Plaintiff and Younger participated in a mediation on August 21, 2012 and, about a week later, participated in a telephonic "outbrief" to discuss the outcomes of the mediation with Hart and the mediator. (¶¶ 25-27.) This call ended, however, when Plaintiff and Younger became hostile towards each other. (¶ 27.)

To alleviate tensions, on August 30, 2012, Sherwood emailed Coghlan that he wanted to reassign Plaintiff to Prescott. (¶ 30.) Hart responded to Sherwood the next day, informing him that she had discussed with Plaintiff a temporary reassignment to Prescott and that Plaintiff did not object to the reassignment. (¶¶ 31, 36.)

Accordingly, Plaintiff worked in the Norther Arizona SSC for several days during mid-September 2012. (¶ 35.) The reassignment was short-lived, as management at the Prescott facility informed Sherwood that it no longer had work for Plaintiff. (¶ 37.) Sherwood also was informed that the Southern Arizona SSC had an upcoming National Air Space System Technical Evaluation Program (NASTEP) inspection and potentially could use Plaintiff. (*Id.*) It was not uncommon for technicians to travel to assist other regions as they prepared for a NASTEP inspection. (¶ 38.)

On September 20, 2012, Plaintiff and Younger participated in a second mediation, which ended after Younger called Plaintiff a racist. (¶¶ 39-40.) After the mediation, Plaintiff informed Hart that he had been called a racist, felt ill, and was placed on leave. (¶ 41.) On September 24, 2012, Plaintiff emailed Hart that he intended to file an EEO Complaint against Younger and asked that his complaint be forwarded to the Accountability Board. (¶ 42.) Hart forwarded the complaint, but the Accountability Board, which is responsible for reviewing managerial responses to allegations of harassment, found Plaintiff's claim beyond its scope. (¶ 43.)

On September 26, 2012, Plaintiff met with Leslie Jones, a Management and Program Analyst responsible for skills training and conflict management, for a one-on-one conflict resolution training session. (¶¶ 15, 46.) Plaintiff informed Jones that his co-workers were not prepared and that many lives would be lost if he did the wrong thing. (¶¶ 53-54.) Plaintiff also stated that someone might bring guns or knives to the office and that he wanted separation from Younger. (¶ 57.) Jones felt that Plaintiff's graphic imagery and conclusions did not fit the context of the business conflicts or facts he was describing to her. (¶ 56.) Jones also stated that she feared for her own safety during her meeting with Plaintiff. (¶ 58.) On October 1, 2012, Jones reported to Coghlan her impressions of her meeting with Plaintiff, which Coghlan in turn relayed to Sherwood. (¶¶ 64-65.)

After his meeting with Jones, Plaintiff asked Hart that he be separated from Younger. (Doc. 67 ¶ 44b.) On October 2, 2012, Sherwood emailed Coghlan that he had decided to reassign Plaintiff to the Southern Arizona SSC, citing Plaintiff's training and certification background, and his desire to separate Plaintiff from Younger as the basis for his decision. (Doc. 63 ¶ 66; Doc. 68-2 at 32.) The next day, Hart assigned Plaintiff to be the Electronics Technician for all VORTAC facilities in the Central Arizona SSC.[2] According to Hart, this was a temporary solution to separate Plaintiff and Younger while a longer-term solution was finalized. (Doc. 63 ¶ 67.) Plaintiff was amenable to this temporary VORTAC assignment. (¶ 68.)

On October 9, 2012, Hart received formal notification that Plaintiff had entered the EEO process, which she forwarded to Sherwood. (¶ 69.) A week later, on October 16, 2012, Sherwood provided Plaintiff a letter informing him that, effective November 4, 2012, he would be temporarily reassigned to Southern Arizona SSC for up to one year. (¶ 70.) Plaintiff objected to the reassignment, but agreed to comply under protest. (*Id.*)

---

[2] Neither party defines VORTAC in their summary judgment briefing. VORTAC stands for Very High Frequency Omni-Directional Radar Tactical Air Navigation. A VORTAC facility houses a navigational aid that uses ground-based electronic navigation signals for aircraft guidance and airport approaches. *Jeppesen Sanderson, Inc. v. U.S.*, 21 Cl. Ct. 655, at 657 n.4 (U.S. Cl. Ct. 1990).

Plaintiff's new assignment required him to drive 266 miles round trip to his work site in Tucson, but his work schedule and pay were not adversely affected by his temporary reassignment. (¶¶ 70, 78.) He also periodically received per diem compensation. (¶¶ 70, 86.) Plaintiff worked on the NASTEP in Tucson from November 5, 2012 through February 19, 2013, when he was placed on leave as a result of a motor vehicle accident. (¶ 71.)

The Southern Arizona SSC's NASTEP ended in March 2013, and on April 23, 2013, Hart informed Plaintiff that upon his return to work from worker's compensation leave he would report back to Scottsdale Tower. (¶ 104.) On June 3, 2013, Plaintiff returned to work. (¶ 105.) He was unable to use his previous workstation because, by that time, it had been reassigned to a new Environmental Technician. (¶ 110.) Plaintiff's new work station was a circular table that lacked a LAN connection. (¶¶ 106-107.) When the new Environmental Technician's project ended, Hart instructed him to no longer report to Scottsdale Tower so that Plaintiff could have his previous workstation back. (¶ 111.)

## **DISCUSSION**

### **I. Disparate Treatment and Retaliation**

Plaintiff's claims arise under Title VII, which prohibits employers from discriminating against employees based on race, and from retaliating against employees for engaging in certain protected activities. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3. Plaintiff claims that Defendant violated Title VII by subjecting him to disparate treatment on account of his race and retaliating against him for filing an EEO complaint by temporarily reassigning him to the Southern Arizona SSC, and by temporarily assigning him a new workstation upon his return to his original post in Central Arizona.

Title VII claims, whether based on retaliation or discrimination, are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). Under this framework, the plaintiff bears the initial burden

of demonstrating a prima facie case of retaliation or racial discrimination. To establish a prima facie case of unlawful retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) he thereafter was subjected by his employer to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). To establish a prima facie case of disparate treatment, a plaintiff must show that he: (1) is a member of a protected class, (2) is qualified for his job, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside his protected class. *McDonnell Douglas*, 411 U.S. at 802. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124.

If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1123-24. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (internal quotation and citation omitted). A plaintiff "cannot simply show that the employer's decision was wrong, mistaken, or unwise." *Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation and citation omitted). Instead, he must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of

credence." *Id.* A plaintiff's evidence on this point "must be both specific and substantial to overcome the legitimate reasons put forth by," the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

For purposes of this order the Court will assume that Plaintiff has demonstrated a prima facie case of disparate treatment and retaliation. Plaintiff, however, "cannot defeat summary judgment simply by making out a prima facie case." *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991). Defendant is entitled to summary judgment because she has articulated legitimate, nondiscriminatory reasons for the challenged actions, and Plaintiff has not proffered specific and substantial evidence of pretext.

Specifically, Defendant contends that Plaintiff was temporarily reassigned because he requested separation from Younger, and Defendant acted to accommodate this request. (Doc. 62 at 11.) In deciding where to reassign Plaintiff, Sherwood determined that Plaintiff "did not have the skills to be reassigned to Sky Harbor; [] the Northern Arizona SSC did not have sufficient work to justify a transfer there; [] the Southern Arizona SSC had an upcoming NASTEP inspection for which [Plaintiff] was qualified; and [] the Central Arizona SSC could not afford to transfer Younger, who was only one of two Environmental Technicians in the region at the time." (*Id.*) Plaintiff also could not continue his interim reassignment to the VORTAC facilities because that position would not guarantee separation from Younger. (Doc. 63 ¶¶ 67-68; Doc. 63-2 ¶ 35.) Accordingly, the reassignment to Southern Arizona SSC addressed the simmering personality conflict between Plaintiff and Younger, while simultaneously meeting the business needs of the FAA.

Plaintiff offers no specific and substantial evidence rebutting these legitimate, non-discriminatory rationales for his reassignment. He argues that Defendant could have reassigned him to a closer FAA facility because Larry Riley, another employee who had a conflict with Younger, was reassigned to Sky Harbor. Unlike Plaintiff, however, Riley had skills and experience that were transferable to Sky Harbor. (Doc. 63 ¶ 32.) Specifically, Riley was responsible for scheduling technical projects and spot-checking

facilities, both of which could be completed even if his primary location was Sky Harbor (¶ 13), whereas Plaintiff lacked the requisite certifications to serve as an Electronics Technician at Sky Harbor (¶ 32).

Plaintiff also argues that Younger could have been reassigned to create the necessary separation. But Younger is an Environmental Technician, which not only has different responsibilities than an Electronics Technician, but also requires a different level of training and skills. For instance, Plaintiff's position requires certifications in VORTAC and Communications and Remote Control Outlets. (Doc. 63 ¶ 66; Doc. 63-2 ¶ 28.) Plaintiff is responsible for maintaining the navigation and control outlets. (Doc. 63 ¶ 3.) In contrast, Younger is responsible for maintaining and repairing air conditioning units, generators, buildings, roads and grounds. (¶ 6.) Plaintiff even admits that Younger was not qualified to perform his duties as an Electronics Technician. (¶ 90; Doc. 63-1 at 35:20-36:3.) Given these different responsibilities and skills, Younger was not equally relocatable, especially in light of the fact that the Central Arizona SSC could not afford to transfer Younger, who was only one of two Environmental Technicians in the region at the time.

Finally, Plaintiff cites to his EEO affidavit, in which he averred that, when Sherwood handed Plaintiff his reassignment, he stated: "You are driving to Tucson every day now, I have to show you I did something." (Doc. 66 at 13.) Plaintiff contends that Sherwood's comments are direct evidence of a retaliatory motive. "Direct evidence is evidence which, if believed, proves the fact of [retaliatory] animus without inference or presumption." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003); see *Chuang*, 225 F.3d at 1128 (statement that "two chinks . . . were more than enough" constituted direct evidence of discriminatory motive); *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (reference to the employee as a "dumb Mexican" constituted direct evidence of discriminatory motive). Here, in contrast, Sherwood's statement, if believed, is wholly consistent with Defendant's non-discriminatory justification for Plaintiff's reassignment—namely that Defendant needed to accommodate Plaintiff's

request to be separated from Younger, and the logistics of that separation required assigning Plaintiff to the Southern Arizona SSC.

As for Plaintiff's temporary workstation assignment, Defendant contends this was purely a matter of resource management. During Plaintiff's reassignment to the Southern Arizona SSC, the FAA hired an Environmental Technician and assigned him to the Scottsdale Tower. (Doc. 63 ¶ 101.) Because no other desk was available at the time, the new technician was instructed to use Plaintiff's old work station. (¶ 102.) Upon Plaintiff's return to Central Arizona SSC, the new technician was still using this workstation. But when his project ended, the technician was instructed not to report to the Scottsdale Tower so that Plaintiff could have his old workstation back. (¶ 111.) Plaintiff offers no evidence to suggesting this rationale is pretextual.

In the end, Plaintiff's arguments reflect a disagreement with the correctness of Sherwood's judgment about how best to separate Plaintiff and Younger while also meeting the FAA's business needs. But "Title VII . . . does not authorize a Federal court to become a super-personnel department that reexamines an entity's business decisions." *Downing v. Tapella*, 729 F. Supp. 2d 88, 93 (D. D.C. 2010). Absent a specific and substantial evidence of a discriminatory or retaliatory motive, the Court may not "second-guess an employer's personnel decision." *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982.)

**II. Hostile Work Environment**

Plaintiff appears to argue, as well, that he was subject to a hostile work environment. Defendant correctly notes that Plaintiff's response in opposition to summary judgment is the first time Plaintiff has relied upon the hostile or offensive work environment theory. (Doc. 1 at 6; Doc. 66 at 2.) It is inappropriate to assert wholly new claims for the first time in opposition to summary judgment. *Yonemoto v. Shinkseki*, 3 F. Supp. 3d 827, 844 n. 8 (D. Haw. Mar. 10, 2014). Nevertheless, Plaintiff's hostile work environment claim fails on its merits.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). To establish a prima facie hostile work environment claim a plaintiff must demonstrate: "(1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642. In determining the severity and pervasiveness of the conduct, the Court must look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Here, the sole basis for Plaintiff's racial discrimination claim is Younger's one-time use of the term "racist" on September 20, 2012.[3] (Doc. 66 at 8.) Younger's remark was neither sufficiently severe nor pervasive to create a hostile work environment. Although perhaps offensive to Plaintiff, Younger calling Plaintiff a racist does not compare to the types of racial epithets, slurs, and extremely abusive language courts have found to be sufficiently severe to sustain a hostile work environment claim. *See, e.g.*, *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687-88 (9th Cir. 2017); *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 908-09 (8th Cir. 2003). Nor was Younger's one-off remark sufficiently pervasive. *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (finding that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to create an actionable claim under Title VII). Defendant, therefore, is entitled to summary judgment on Plaintiff's belatedly advanced hostile work environment claim.

---

[3] There is some disagreement about whether being called a racist can be considered racially-motivated. *See Squitieri v. Piedmont Airlines, Inc.*, No. 3:17-CV-441, 2018 WL 934829, at *3 (W.D. N.C. Feb. 16, 2018).

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 62) is **GRANTED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 25th day of April, 2018.

Douglas L. Rayes
United States District Judge